*[Handwritten annotations across top and throughout form: "Proof The Clerk doesn't Answer", "Answer My Request for summons and copies of Complaint So I", "I cannot File it", "as I Can't serve it.", "Clerk Don't answer"]*

| CIVIL TRACKING ORDER (STANDING ORDER 1- 88) | DOCKET NUMBER 2285CV00686 | Trial Court of Massachusetts The Superior Court |
|---|---|---|

| CASE NAME | Dennis P. McManus, Clerk of Courts |
|---|---|
| Steven L Smith #2201409 vs. Dr. Margarita Z Daou et al | |

| TO | COURT NAME & ADDRESS |
|---|---|
| Steven L Smith #2201409 200 Nashua Street Boston, MA 02114 | Worcester County Superior Court 225 Main Street Worcester, MA 01608 |

### TRACKING ORDER - F - Fast Track

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

**STAGES OF LITIGATION**           **DEADLINE**

| | SERVED BY | FILED BY | HEARD BY |
|---|---|---|---|
| Service of process made and return filed with the Court | | 09/15/2022 | |
| Response to the complaint filed (also see MRCP 12) | | 10/17/2022 | |
| All motions under MRCP 12, 19, and 20 | 10/17/2022 | 11/14/2022 | 12/14/2022 |
| All motions under MRCP 15 | 10/17/2022 | 11/14/2022 | 12/14/2022 |
| All discovery requests **and depositions** served and non-expert depositions completed | 04/13/2023 | | |
| All motions under MRCP 56 | 05/15/2023 | 06/12/2023 | |
| Final pre-trial conference held and/or firm trial date set | | | 10/10/2023 |
| Case shall be resolved and judgment shall issue by | | | 06/17/2024 |

The final pre-trial deadline is <u>not the scheduled date of the conference</u>. You will be notified of that date at a later time.

Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.

This case is assigned to

| DATE ISSUED | ASSISTANT CLERK | PHONE |
|---|---|---|
| 06/21/2022 | Anne O'Connor | (508)831-2361 |

Date/Time Printed: 06-21-2022 13:00:16

(SEAL)

| JUDGMENT OF DISMISSAL UNDER STANDING ORDER 1-88 | DOCKET NUMBER 2283CV00110 | Trial Court of Massachusetts The Superior Court |
| --- | --- | --- |
| CASE NAME **Steven L Smith vs. Matthew D Bober, Esq.** | | Robert S. Creedon. Jr., Clerk of Courts |
| TO: Steven L Smith 1709717 918 200 Nashua Street Boston, MA 02114 | | COURT NAME & ADDRESS Plymouth County Superior Court - Brockton 72 Belmont Street Brockton, MA 02301 |

This action came on before the Court, pursuant to Standing Order 1-88, and it appearing that service of process has not been completed upon the defendant(s) named below, it is **ORDERED and ADJUDGED** that the complaint is hereby dismissed, without prejudice, with respect to said defendant(s).

  **Defendant(s):**   **Matthew D Bober, Esq.**

A TRUE COPY ATTEST

Clerk of Courts

| DATE ISSUED 06/17/2022 | CLERK OF COURTS **Robert S. Creedon, Jr., Clerk of Cou** | ASSISTANT CLERK X | SESSION PHONE# |
| --- | --- | --- | --- |

Date/Time Printed: 06-17-2022 10:05:55

SCV127\ 11/2014

8/3/22, 9:38 AM

*The Clerk*

## United States District Court
### District of Massachusetts (Boston)
#### CIVIL DOCKET FOR CASE #: 1:21-cv-12056-DJC

*Doesn't Answer*

Smith v. Daou et al
Assigned to: Judge Denise J. Casper
Cause: 42:1983 Prisoner Civil Rights

Date Filed: 12/16/2021
Jury Demand: None
Nature of Suit: 550 Prisoner: Civil Rights
Jurisdiction: Federal Question

**Plaintiff**

**Steven L Smith**

represented by **Steven L Smith**
2201409
Suffolk County Jail
200 Nashua Street
Boston, MA 02114
617-635-1100
PRO SE

V.

**Defendant**

**Margarita Daou**
*MD of W.R.C.H*

**Defendant**

**Sherry Hannen**
*LCSW of W.R.C.H*

**Defendant**

**Merdith Lobour**
*DET. PTPWN, P.D*

**Defendant**

**Attorney Ryan J Matthews**

**Defendant**

**Andrea Dinsmore**

**Defendant**

**Dr Ashley Murray**

**Defendant**

**Staff Member Donna**
*WRCH*

**Defendant**

**Staff Member Aaron**
*WRCH*

*Still writing to serve this.*

*Clerks don't answer*

*Letters.*

*See docket entries all the letters I sent not answered*

*[handwritten: The Clerk]*

ProSe

**United States District Court**
**District of Massachusetts (Boston)**
**CIVIL DOCKET FOR CASE #: 1:21-cv-12056-DJC**

*[handwritten: Doesn't Answer]*

Smith v. Daou et al
Assigned to: Judge Denise J. Casper
Cause: 42:1983 Prisoner Civil Rights

Date Filed: 12/16/2021
Jury Demand: None
Nature of Suit: 550 Prisoner: Civil Rights
Jurisdiction: Federal Question

**Plaintiff**

**Steven L Smith**

represented by **Steven L Smith**
2201409
Suffolk County Jail
200 Nashua Street
Boston, MA 02114
617-635-1100
PRO SE

V.

**Defendant**

**Margarita Daou**
*MD of W.R.C.H*

**Defendant**

**Sherry Hannen**
*LCSW of W.R.C.H*

**Defendant**

**Merdith Lobour**
*DET. PTPWN, P.D*

**Defendant**

**Attorney Ryan J Matthews**

**Defendant**

**Andrea Dinsmore**

**Defendant**

**Dr Ashley Murray**

**Defendant**

**Staff Member Donna**
*WRCH*

**Defendant**

**Staff Member Aaron**
*WRCH*

*[handwritten: Still writing to serve this. Clerks don't answer letters. See docket entries all the letters I sent NONE answered]*

**Defendant**

**Staff Ali**

**Defendant**

**Staff Member Siekron**
*WRCH*

**Defendant**

**Sabrina**
*Nurses of WRCH*

**Defendant**

**Nurse Pam**
*WRCH*

**Defendant**

**Staff Member Sean**
*WRCH*

**Defendant**

**Staff member Mrs Nielsa**
*WRCH*

**Defendant**

**Kathleen Wenzel**
*Chief Executive WRCH*

| Email All Attorneys |

| Email All Attorneys and Additional Recipients |

| Date Filed | # | Docket Text |
|---|---|---|
| 12/15/2021 | 1 | COMPLAINT against All Defendants, filed by Steven L Smith. (Attachments: # 1 Supplement, # 2 Exhibit, # 3 Affidavit, # 4 Cover Letter)(Castilla, Francis) (Entered: 12/16/2021) |
| 12/15/2021 | 2 | MOTION for Leave to Proceed in forma pauperis by Steven L Smith. (Attachments: # 1 Exhibit)(Castilla, Francis) (Entered: 12/16/2021) |
| 12/16/2021 | 3 | ELECTRONIC NOTICE of Case Assignment. Judge Denise J. Casper assigned to case. If the trial Judge issues an Order of Reference of any matter in this case to a Magistrate Judge, the matter will be transmitted to Magistrate Judge Judith G. Dein. (Finn, Mary) (Entered: 12/16/2021) |
| 01/26/2022 | 4 | Letter/request (non-motion) from Steven L Smith. (McDonagh, Christina) (Entered: 01/26/2022) |
| 01/26/2022 | 5 | DOCKET SHEET mailed to Steven L. Smith. (Perez, Isabella) (Entered: 01/26/2022) |
| 02/11/2022 | 6 | MOTION to Request Correction to 1 Complaint by Steven L Smith. (Attachments: # 1 Cover Letter, # 2 Exhibit) (Warnock, Douglas) (Entered: 02/11/2022) |
| 02/11/2022 | 7 | MOTION to Correct the Names of Defendants and Add defendants to Action re 1 |

| | | Complaint by Steven L Smith. (Attachments: # 1 Cover Letter, # 2 Exhibit) (Warnock, Douglas) (Entered: 02/11/2022) |
|---|---|---|
| 02/14/2022 | 8 | Letter/request (non-motion) from Steven L. Smith. (Attachments: # 1 Exhibits, # 2 Envelope) (Warnock, Douglas) (Entered: 02/15/2022) |
| 02/16/2022 | 9 | EXIGENT MOTION for a Permanent and Immediate Injunction by Steven L Smith. (Warnock, Douglas) (Entered: 02/16/2022) |
| 02/16/2022 | 10 | AFFIDAVIT of Steven L. Smith in Support of 9 MOTION for Permanent Injunction filed by Steven L Smith. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F) (Warnock, Douglas) (Entered: 02/16/2022) |
| 02/16/2022 | 11 | MOTION to Request Court Order by Steven L Smith. (Warnock, Douglas) (Entered: 02/16/2022) |
| 02/22/2022 | 12 | AFFIDAVIT in Support of 1 Complaint. (Attachments: # 1 Cover Letter) (Warnock, Douglas) (Entered: 02/22/2022) |
| 02/24/2022 | 13 | MOTION to Include all of Plaintiff's W.R.C.H. Medical Records and Non-Medical Records Produced or Within his files and Utilized to Evaluate him by Steven L Smith.(Currie, Haley) (Entered: 02/24/2022) |
| 02/28/2022 | 14 | Letter/request (non-motion) from Steven Smith. (Currie, Haley) (Entered: 02/28/2022) |
| 03/04/2022 | 15 | Letter/request (non-motion) from Steven Smith. (Currie, Haley) (Entered: 03/04/2022) |
| 03/14/2022 | 16 | MOTION to Request Court Order for Production of Documents and Other Records in Possession of the Defendants by Steven L Smith. (Attachments: # 1 Cover Letter)(Currie, Haley) (Entered: 03/14/2022) |
| 03/14/2022 | 17 | Letter/request (non-motion) from Steven Smith. (Currie, Haley) (Entered: 03/14/2022) |
| 03/14/2022 | 18 | Liberty Issue Seeking Exigent Court Order to Vacate and Expunge Two Evaluation Reports by the Defendants of Worcester Recovery Center and Hospital Argument from Steven Smith. (Currie, Haley) (Entered: 03/14/2022) |
| 03/14/2022 | 19 | Addendum II and Supplement re 1 Complaint with Attached Exhibits and to add Additional Defendants by Steven L Smith. (Currie, Haley) (Additional attachment(s) added on 3/14/2022: # 1 Exhibits) (Currie, Haley). (Entered: 03/14/2022) |
| 03/14/2022 | 20 | Specific Acts of Harm Caused by Defendant to Violate Plaintiff's Rights by Steven Smith. (Currie, Haley) (Entered: 03/14/2022) |
| 03/14/2022 | 21 | AFFIDAVIT in Support and to Supplement 1 Complaint of Steven Smith by Steven L Smith. (Currie, Haley) (Entered: 03/14/2022) |
| 03/14/2022 | 22 | Addendum III to Supplement 1 Complaint and Add Additional Defendants and Complaints in Support of Their Harms to Plaintiff by Steven L Smith. (Currie, Haley) (Entered: 03/14/2022) |
| 03/15/2022 | 24 | Letter/request (non-motion) from Steven Smith. (Currie, Haley) (Entered: 03/15/2022) |
| 03/28/2022 | 25 | NOTICE of Change of Address by Steven L Smith (Attachments: # 1 Envelope) (Currie, Haley) (Entered: 03/28/2022) |

| 03/28/2022 | 26 | NOTICE of Change of Address (second filing) by Steven L Smith (Attachments: # 1 Envelope)(Currie, Haley) (Entered: 03/28/2022) |
| 04/04/2022 | 27 | Letter/request (non-motion) from Steven Smith. (Currie, Haley) (Entered: 04/04/2022) |
| 04/04/2022 | 28 | Letter/request (non-motion) from Plaintiff Steven L. Smith. (Figueroa, Tamara) (Entered: 04/05/2022) |
| 04/08/2022 | 29 | Letter/request and Notice of Address change from Steven Smith. (Currie, Haley) (Entered: 04/08/2022) |
| 04/18/2022 | 30 | Letter/request (non-motion) from Plaintiff Steven L. Smith. (Figueroa, Tamara) (Entered: 04/18/2022) |
| 04/19/2022 | 31 | Mail Returned as Undeliverable. Mail sent on 3/15 to Steven Smith. (Currie, Haley) (Entered: 04/19/2022) |
| 04/28/2022 | 32 | MOTION of Complaint the District Court Clerk's Have Not Filed Motions Nor Amended The Complaint As Requested in Said Motions by Steven L Smith. (Zamorski, Michael) (Entered: 04/29/2022) |
| 05/02/2022 | 33 | MOTION to Request Court Order for Production of Documents, Video, and other Records from the Defendants by Steven L Smith.(Currie, Haley) (Entered: 05/02/2022) |
| 05/02/2022 | 34 | MOTION to Request Court Order for Production of Documents and Other Records in Possession of the Defendants by Steven L Smith.(Currie, Haley) (Entered: 05/02/2022) |
| 05/02/2022 | 35 | MOTION to Supplement Addendum II and Add Additional Documents in Support of it and his Original Complaint by Steven L Smith.(Attachment(s): # 1 Proposed Addendum II, # 2 Proposed Exhibit 1, # 3 Proposed Exhibit 2) (Currie, Haley). (Entered: 05/02/2022) |
| 05/02/2022 | 36 | Letter/request (non-motion) from Steven Smith. (Currie, Haley) (Entered: 05/02/2022) |
| 05/02/2022 | 37 | Specific Acts of Harm Caused by Defendants to Violate Plaintiff's Rights by Steven Smith. (Currie, Haley) (Entered: 05/02/2022) |
| 05/02/2022 | 38 | Letter/request to transfer matter to Judge Robertson from Steven Smith. (Currie, Haley) (Entered: 05/02/2022) |
| 05/04/2022 | 39 | MOTION to Include Additional Defendants and to Supplement and Support the Complaint with Motions, Affidavits and Documentary Exhibits by Steven L Smith. (Attachments: # 1 Proposed Addendum, # 2 Proposed Exhibit, # 3 Cover Letter) (Currie, Haley) (Entered: 05/04/2022) |
| 05/04/2022 | 40 | AFFIDAVIT of Steven Smith in Support re 39 MOTION to IncludeAdditional Defendants and to Supplement and Support the Complaint with Motions, Affidavits and Documentary Exhibts filed by Steven L Smith. (Currie, Haley) (Entered: 05/04/2022) |
| 05/04/2022 | 41 | Letter/request (non-motion) from Steven Smith. (Currie, Haley) (Entered: 05/04/2022) |
| 05/26/2022 | 42 | NOTICE of Change of Address by Steven Smith (Zamorski, Michael) (Entered: 05/26/2022) |

8/3/22, 9:38 AM
Case 1:22-cv-11321-AK   Document 1-1   Filed 08/12/22   Page 8 of 44
CM/ECF - USDC Massachusetts - Version 6.3.3 as of 8/9/2022

| 06/13/2022 | 43 | Letter/request (non-motion) from Steven Smith. (Currie, Haley) (Entered: 06/14/2022) |
|---|---|---|
| 06/21/2022 | 44 | NOTICE of Change of Address by Steven L Smith (Currie, Haley) (Entered: 06/21/2022) |
| 06/21/2022 | 45 | NOTICE of Average Monthly 6-month Account Balances by Steven L Smith (Currie, Haley) (Entered: 06/21/2022) |
| 06/21/2022 | 46 | Prisoner Trust Fund Account Statement re 45 NOTICE of Average Monthly 6-month Account Balances by Steven L Smith. (Currie, Haley) (Entered: 06/21/2022) |
| 06/23/2022 | 47 | Letter/request (non-motion) from Steven L. Smith. (Attachments: # 1 Exhibit AA) (Currie, Haley) (Entered: 06/23/2022) |
| 06/30/2022 | 48 | MOTION to Include Documents Recently Received that Support and Prove Plaintiff's Allegations and Affidavit in Support by Steven L Smith. (Attachments: # 1 Proposed Exhibits)(Currie, Haley) (Entered: 06/30/2022) |
| 07/11/2022 | 49 | Letter/request (non-motion) from Steven Smith. (Currie, Haley) (Entered: 07/12/2022) |
| 08/01/2022 | 50 | Letter/request (non-motion) from Steven Smith. (Currie, Haley) (Entered: 08/01/2022) |
| 08/01/2022 | 51 | Letter/request (non-motion) from Steven Smith. (Currie, Haley) (Additional attachment(s) added on 8/1/2022: # 1 sealed attachment) (Currie, Haley). (Entered: 08/01/2022) |

YOUR HONOR, I AM INNOCENT
I WAS ARRESTED 7-5-18

COMMONWEALTH OF MASSACHUSETTS

Yet only Now I get

Barnstable, ss

Commonwealth                                                    Barnstable Superior Court

V                                                              Indictment No. 19 – 006

Steven L. Smith

YOUR Honor

This?

AFFIDAVIT IN SUPPORT OF MOTION TO DISMISS

7 Other Lawyer's wave

NOT do this!

I, Steve Loesch, under the pains and penalties of perjury, state as follows:

1. I am the attorney for the defendant.
2. I have read the police reports, discovery material and grand jury testimony concerning this case.
3. That the defendant, in counts one and two of the indictment, Is charged with orally raping a fifteen year old boy on July 5, 2018.
4. The alleged victim was examined at Cape Cod Hospital as a sexual abuse victim. He told the nurse practitioner that he had not bathed, showered or washed off since the alleged assault occurred.
5. His genital area was swabbed six times.
6. A Massachusetts state police criminalistic report from August 21, 2018 found that no saliva was detected on the alleged victims genital area that was swabbed at Cape Cod Hospital.
7. The grand jury was not told of the criminalistic report and was not told of the result, namely, that the six swabs detected no saliva on the alleged victim's genital area.

Signed this 20th day of July, 2022.

_____

Steve Loesch

July 20, 2022

I should
Have never
Been indicted on
A Life offense.
I've spent 4 years
In Jail and the
Cop needs To
Lose her Job
And PAy
Me!



*(EX 1)*
*(III)*

The Law Office of
# Ryan J. Matthews

*U.S. Court*

*Exhibit C*

*I was Found Competent at BSH and not Dangerous !*

December 4, 2020

Steven L. Smith
Inmate No.: 716070
Barnstable County Correctional Facility
6000 Sheriff's Place
Buzzards Bay, MA  02542

      Re:   Commonwealth v. Steven L. Smith
             Barnstable Superior Court
             Docket No.: 1972-CR-00006

Dear Mr. Smith,

      I am writing to you today to provide you with the evaluation that was completed on November 27, 2020 at the Bridgewater State Hospital.

      It is notable that the evaluation finds that you are competent to stand trial and assist in your defense at trial.  Previously, the court clinician sent you to Bridgewater State Hospital for a further screening after finding you to be not competent.

      As always, please feel free to call or write this office when you have a question or concern regarding your case.

                  Very truly yours,

                  Ryan J. Matthews

RJM;alm

Enclosure

One Park Place, Plymouth, MA 02360
Phone: (508) 747-0300   Fax: (508) 747-3335
E-Mail: Ryan@RyanJMatthews.com

Nov. 30. 2020  9:03AM                                                                No. 3707    P.  13

BRIDGEWATER STATE HOSPITAL                                    13

Smith, Steven                                                                      BSH #M133985

**§ 15(b) COMPETENCE TO STAND TRIAL EVALUATION**

November 27, 2020                                                          Ariel Ingber, Psy.D.

Regarding a risk of harm to others, Mr. Smith has a significant history of incurring both nonviolent and violent legal charges. He indicated that he has only acted violently while incarcerated for "self-defense" and has not been involved in any physical altercations while at BSH. Further, he has not been described as threatening or aggressive in jail. During his current hospitalization, Mr. Smith has not voiced homicidal ideation in meetings with his treatment providers; similarly, during the current evaluation he reported no current experiences of homicidal ideation. Therefore, it is my clinical opinion that Mr. Smith does not currently present as a substantial risk of harm to others due to mental illness.

Finally, it is my opinion that Mr. Smith does not require further psychiatric hospitalization at this time. It is also my opinion that he could be safely managed in a correctional setting at this time. Mr. Smith has been engaged with a clinician in jail to help him process his ongoing frustration related to his current legal circumstances; he has described his engagement with this provider as beneficial and plans to continue seeking out these services, if needed. Mr. Smith is scheduled to return to Barnstable County Superior Court on 12/1/2020.

Respectfully Submitted,

*Ariel Ingber* Psy.D.

Ariel Ingber, Psy.D.
Post-Doctoral Fellow
Bridgewater State Hospital

*Jennifer McAllister, Psy.D*
Forensic Mental Health Supervisor
Bridgewater State Hospital

RECEIVED

NOV 27 2020

BRIDGEWATER STATE HOSPITAL
RECORDS DEPT.

*She found me competent and NOT Dangerous*

[EXHIBIT A]

U. S. COURT Exhibit

### ORDER

The court concludes that the Commonwealth has not met its burden to demonstrate by a preponderance of the evidence that the defendant, Steven Smith, is competent to stand trial at the present time. The defendant is ruled, based upon a preponderance of the evidence, presently incompetent to stand trial on these indictments.

The Court, having found Smith presently incompetent to stand trial, **ORDERS**:

1. Trial of this case is stayed until such time as Smith becomes competent to stand trial, unless the case is dismissed; and

2. Pursuant to G. L. c. 123, § 16(a), that Smith be hospitalized at a facility for a period of forty days for observation and examination, provided, that the combined periods of hospitalization under this Order and Smith's prior § 15(b) commitment shall not exceed fifty days. The court does not determine that the failure to retain him in strict security would create a likelihood of serious harm by reason of mental illness, therefore the Court does not order such hospitalization to be at the Bridgewater State Hospital.

So Ordered.

Even The Judge Ruled I'm NOT Seriously mentally ill or dangerous

March 25, 2021

Mark C. Gildea

Mark C. Gildea
Justice of the Superior Court

11

*[handwritten top:] EXHIBIT D*
*CIVIL COMPLAINT EXHIBIT ✱*

## Worcester Recovery Center & Hospital
### CERTIFICATE OF NEED FOR ADMISSION

PATIENT NAME: SMITH, STEVEN
MED REC #: ~~~~~~~~~
EMP #: DMR7239041

ADMISSION DATE: 3/ 25 21
~~~~ ~~~~~~~ ~~~

*[handwritten:] I DON'T FIT ANY OF These Criterias! I want it*

Admitting psychiatrist: Complete Box I (A through C) or Box II. Sign on the first working day of date of admission.

*[handwritten:] And All "your" Records out of my File!*

Box I    Active Level of Hospital Care Criteria

A. This patient is appropriate for admission to ___WRCH___ for Active level of hospital treatment for the following reasons: (Check all that apply)
  *[✓]* Actual or potential danger to self, others, or property due to serious mental illness. *[handwritten:] Read it*
  *[✓]* Serious mental illness which fails to respond to intensive outpatient treatment.
  *[✓]* Risk of physical injury due to judgement so impaired that he/she is unable to protect self in community and reasonable provision for protection is not available in community.
  ___ Severe withdrawal or regression that cannot be treated safely or effectively in any other setting but an inpatient psychiatric unit.
  ___ Evidence of serious mental illness including severe disorientation, increased agitation and/or assaultive behavior.
  ___ Need for continuous skilled observation and/or initiation of drug trial or regulation of dosage which are high risk in non-hospital environment.
  ___ Evidence of a pathological condition which requires inpatient observation and tests which only can be provided in an inpatient setting.
  ___ Active treatment which can reasonably be expected to improve the patient's condition.

*[handwritten right margin:] EXHIBIT D*

B. Provisional Diagnosis(es): *[handwritten:] Mood d/o*

*[signature:] R Sharif MD*
Signature of Admitting Psychiatrist    *3/25/21*    *2200*
*[signature:] Melissa Borges RN*    *3/26/21*    *12.55pm*

Box II    Extended Level of Hospital Care Criteria

This patient does not meet the criteria for necessity of active level of hospital care. (Check appropriate category)
  ___ The patient has no apparent psychiatric illness.
  ___ The patient can better be treated on an outpatient basis.
  ___ Diagnostic and/or Forensic Evaluation only, in the absence of any of the above criteria of active level.
  ___ The patient can more appropriately be treated in an alternative setting:
    ___ Medical facility-Level 1 or 2 Medicare Skilled Nursing Facility or Rehabilitation Hospital
    ___ General Hospital.
    ___ Structured living program-Level 3 or 4 Non-Medicare Nursing Home Facility or Rehabilitation Program
    ___ Mental Retardation Facility - DMR
    ___ Need for further stabilization in order to implement discharge or alternative setting.

  Other (specify): _____

Signature of Psychiatrist: _____

*[handwritten diagonal blue:] Same day of Order/Judges Order yet as soon as I got To WRCH They did this!*

Original: Medical Record
  ___ UR Department
  ___ Revenue Department

*[handwritten:] This Requires 2 Doctors or Doctor + RN!*

EXHIBIT E

Worcester Recovery Center
309 Belmont Street
Worcester, MA 01604
508-368-4000

Addendum II Attachment & 5 pages

Name: SMITH,STEVEN L. Unit #: CH00096738 Acct#: HW000008594

Date of Treatment Team meeting: 3/30/21

CIVIL ACTION EXHIBIT

Interpreter Needed? Yes ( ) No (X)
If Yes is checked, were they present? Yes ( ) No ( ) Explain:

Patient Treatment and Recovery Goal(s): • "I want them to find me competent"

Strengths: *Interpersonal, Education, Employment, Knowledge/Aptitude/Skills, Interests/Experience:* able to advocate for self

Risks:
History of Violence to Others:
History of Suicide Attempt:
History of Self Injurious Behavior:
History of Sexually Problematic Behavior:
History of Fire Setting Behavior:
History of Inability to Self-Preserve:
History of Substance Use:
Substance Use Involved in Violence, Suicide, PSB, Fire Risk:

They were suppose to evaluate my competency "not treat me"

Psychiatric Diagnosis:
Mood d/o; r/o Psychosis;
Antisocial traits
Other Diagnoses:
Hypertension; Hyperlipidemia; Prediabetes; Obesity

Acute/Active Medical Risks:
Metabolic Risks: Yes
Fall Risk: No
Dysphagia Screening Score: 0
Current Pain management issues:

Non-Clinical Discharge Barriers: *•Reference Discharge Readiness Assessment*
Housing/Specialty Placement Barrier:
Legal Issues Barrier:
Patient/Family/Guardian Disagreement Barrier:

I am Not Guilty of my charges but W.R.C.H treated me as if I were A convicted Sex offender

Barrier/Problem 1: Dangerousness/Sexualized Behavior
As Evidenced By: Charged with Rape of a Child
Long Term Goal 1:
LTG 1 Target Date:

| Date Created | Short Term Goals | Target Date | Interventions |
|---|---|---|---|
| 3/30/21 | #1 Client will remain free from problematic sexualized behaviors, threatening, assaultive, and / or self-injurious behaviors x 30 days. | 4/30/21 | #1 - Nursing: Sarah Maker RN and nursing staff will meet with client for up to 10 minutes weekly to discuss ways client can remain free from unsafe behaviors. Staff will encourage client to utilize learned coping skills and make suggestions of how the client can remain in behavioral control.<br><br>#1 Social Work: Sherry Hannan, LICSW will meet with Mr. Smith for at least 30 minutes weekly to assess mental |

Name: SMITH,STEVEN L.   Unit #: CH00096738   Acct #: HW000008504

*EXHIBIT E*

| Date Created | Short Term Goals | Target Date | Interventions |
|---|---|---|---|
| | *I am Not on my psych Meds!* | | status and aid in discharge planning to help mitigate risk in the community by offering housing options and connections with community providers.<br><br>#1 Psychiatry: Psychiatry:  MD and psychiatry staff will meet with patient for 20 minutes once a week to discuss patient's perspective on how medications are affecting his behavior and how he feels on the medication. |
| 4/2/21 | #3 – Mr. Smith will develop awareness/insight into negative relationship patterns and boundaries and improve communication skills by utilizing learned verbal and non-verbal techniques. | 5/2/21 | Occupational Therapy: Diane Eames, OTR/L and/or Rehabilitation Staff will engage client in Relationships & Communication Group and Milieu  Groups 1x/week or in daily individualized treatment activities (as advised by COVID-19 protocols) to provide client with opportunities to develop social and communication skills. |

PROGRESS SINCE LAST REVIEW:
STG #1 Goal and intervention added- *S.Maker RN 3/30/21*
STG#2 – Goal and intervention added. S. Hannan, LICSW 3/30/21
STG#3-Goal and intervention added.  -*Diane Eames, OTR/L 4/2/2021 at 9:00am*

Problem 2:
As Evidenced By:
Long Term Goal 2:
LTG 2 Target Date:

| Date Created | Short Term Goals | Target Date | Interventions |
|---|---|---|---|
| | #1 - | | |
| | #2 - | | |
| | #3 - | | |

PROGRESS SINCE LAST REVIEW:
STG#1 -
STG#2 -
STG#3 -

Problem 3:
As Evidenced By:
Long Term Goal 3:
LTG 3 Target Date:

| Date Created | Short Term Goals | Target Date | Interventions |
|---|---|---|---|

years of perceiving obstacles when pursuing his defense strategy and receiving little to no support from his attorneys. His thought content was reality-based and focused on his criminal matters. Although he expressed multiple statements suggestive of an underlying paranoia, for each statement he provided documents and real events that justified his beliefs. Thus, they did not seem to have psychotic roots. For example, he extensively talked about the Grand Jury and how he believed the alleged victim, police officers, and the district attorney provided false and/or misleading information and withheld exculpatory evidence in his case, which eventually led to his case indictment. He showed several documents supporting these allegations, such as exhibits, phone call analyses, DNA results, email conversations between him and his attorneys, etc. He did not exhibit or endorsed signs of responding to internal stimuli, such as auditory or visual hallucinations

Although Mr. Smith's cognitive abilities were not formally assessed, based on my clinical experience, he appeared to be functioning within the average range when compared to other individuals of the same age, but above-average when compared to psychiatric patients. He was oriented to time, place, and situation; he demonstrated sustained attention and alertness; he was able to maintain a fast-paced conversation (no response latency noticed); he did not exhibit signs of memory deficits; his receptive and expressive language was intact; and his formal thought processes seemed adequate (e.g., he was able to communicate using abstract concepts, discuss hypothetic situations, and demonstrated problem-solving skills).

**CLINICAL OPINION REGARDING COMPETENCY TO STAND TRIAL:**
**History of and Related Information Regarding Competence to Stand Trial:**
Prior to the index offenses, Mr. Smith had no history of CST evaluations or concerns. Since 2018, he has had three forensic hospitalizations (one in Bridgewater State Hospital, and two in Worcester Recovery Center and Hospital). Specifically, on 11/12/2020, Mr. Smith's CST-related abilities were assessed for the first time on Section 15(a) screening evaluation. The CST question was initially raised by his then criminal defense attorney, Ryan Matthews, Esq., who indicated that Mr. Smith had been fixed on details of his case, was unable to focus on a broader picture, and engaged in behaviors that could damage his defense strategy (e.g., writing letters to parties involved while giving away possible defense strategies, and provide information that could be detrimental to his case). Dr. Towers conducted the 15(a) evaluation. At that time, she agreed with Mr. Matthew's concerns and recommended further assessment of his CST-related abilities in an inpatient facility; later conducted in BSH.

As mentioned above, on 11/12/2020, Mr. Smith was hospitalized at Bridgewater State Hospital for an evaluation of his CST under Section 15(b). He was diagnosed with Paranoid Personality Disorder and Narcissistic Personality Disorder. He was not prescribed psychiatric medications. He was opined to have sufficient CST-related abilities and no need for further inpatient treatment. However, in March 2021, Mr. Smith was found IST. Attorney Garnett reported that the then Presiding Judge noted that the forensic evaluator (Dr. Ingber) had not read letters that Mr. Smith had sent to the Judge and the district attorney, which were thought to be significantly relevant to the CST issue. In WRCH, he was opined to not have sufficient CST-related abilities due to maladaptive personality features. In October 2021, after another CST evaluation at WRCH, he was opined to continue having insufficient CST-related abilities due to maladaptive personality features. He was consistently diagnosed with Paranoid Personality Disorder and Narcissistic Personality Disorder and was not prescribed psychiatric medications. Of note, Ms. Garnett (current defense attorney) indicated that in one of the many 15(a) CST screening evaluations, the forensic evaluator did not report concerns or recommended further evaluation. Yet, he was still ordered to participate in a 15(b) CST inpatient evaluation.

Since 2018, Mr. Smith has been assigned seven different criminal defense attorneys by the Court. During the current evaluation, he explained his unsuccessful history of working with attorneys based on several concerns about the objectivity of court-appointed criminal defense attorneys in the Cape Cod area. Mr. Smith indicated that although he was "very happy" with his first attorney, Colleen Duarte after she eventually refused to sign specific documents that he thought were relevant to his case, he had to fire her. He also fired his second attorney, Sean Early, after two months of reportedly no communication. He fired his third attorney, Mr. Bober, after eight months of what he described as unproductive communication and

under M.G.L. c. 123, §18(a). If the Court has any additional questions, I may be reached at 617.626.8869, 781.384.0714, or Carla.Munoz@mass.gov. Alternatively, if I am unavailable, you can contact the legal liaison, Jeanne Antille at 617-626-8824, the forensic psychology department's administrative assistant, Carmen Morales, at 617-626-8853, or the Forensic Director, Dr. John Brown at 617-6268733.

Respectfully submitted,

Carla G. Muñoz, Ph.D.
Licensed Psychologist
Designated Forensic Professional
Tuft Medical Center
Dr. Solomon Carter Fuller Mental Health Center

*Bof Dr. MUM02*   *Page # 2 of 1*

anything he said might be reported to the court through either written report or oral testimony. He was also informed that he did not have to participate in the interview, could decline to answer specific questions, and could end the interview at any time. He was informed that if he chose to not participate in the interview, a written report based on other available information would be submitted to the court. Additionally, he was informed that if I received any information about him having the intent to harm himself or others, or if I became aware of any child, elder, or disabled person abuse, I would need to report or take other appropriate actions to ensure his safety and the safety of the other person(s). I also included that I could be called to testify and the current evaluation could be used at his trial should he decide to place his mental status at issue.

In my opinion, Mr. Smith demonstrated a well understanding of the limits of privilege and confidentiality, the purpose, and the voluntary nature of the evaluation. He immediately said, "Yeah, the Lamb Warning." Asked about confidentiality, he said, "this is not confidential; I know, this is a court-ordered evaluation; this goes to the Judge." Asked about voluntariness, he said, "I am not forced to answer your questions." Asked about the purpose of the evaluation, he said, "competency to stand trial." After he was given an opportunity to ask questions, he agreed to participate in the evaluation. He provided similar statements during the subsequent session. Based on his responses, I opine that throughout the current evaluation, he understood the limits of privilege and confidentiality, voluntariness, and the purpose of the evaluation.

*Page 2 of 12*

## SOURCES OF INFORMATION:
### Interviews/Consultations
1. In-person interviews with Mr. Smith on 6/01/2022 for 65 minutes; on 6/06/2022 for 90 minutes.
2. Ongoing consultation with Mr. Smith's treatment team at DSCFMHC.
3. Telephone consultation with Ellen J. Garnett, Esq (Mr. Smith's criminal defense attorney; 508.388.9674, 508.776.6926) on 6/06/2022 for 34 minutes. *LOOK*

I attempted to obtain Mr. Smith's letters, previously sent to the Judge and the district attorney by contacting Ms. Nancy Barrow (508.362.8103) on 6/06/2022.

### Documents Provided by the Court:
4. Order for Hospitalization and Examination from Barnstable Superior Court, dated 5/19/2022.
5. Docket Report from Barnstable County, Commonwealth vs. Smith, Steven.
6. §15 (a) Competence to Stand Trial Screening Evaluation authored by Karin D. Towers, J.D., Ph.D. and ABPP (forensic), dated 5/19/2022.
7. Criminal Docket in relation to docket # 1826CR000671, dated 7/05/2018.
8. Mr. Smith's Massachusetts Sex Offender records.
9. Mr. Smith's Criminal Offender Record Information (CORI)
10. Provincetown Police Department, Ref 18-106-AR, Narrative for Detective Richard Alves, dated 7/05/2018.
11. Provincetown Police Department, Ref 18-106-AR, Narrative for Detective Jefferson Willis, dated 7/05/2018.
12. Transport form to Solomon Carter from Nasua Street Jail, Boston, Massachusetts, dated 5/20/2022.

### Documents Provided by DSCFMHC:
1. Dr. Solomon Carter Fuller Mental Health Center Records from the current episode of care, including Intake Information Form, Psychiatry, Social Work, Psychology, and other progress notes.

### Documents Provided by Mr. Smith:
1. Section 15(b) Competence to Stand Trial Evaluation, authored by Ariel Ingber, Psy.D., dated 11/27/2020.
2. Civil Docket for Case #- 1:21-cv-12056-DJC, filed 12/16/2021.
3. Handwritten Motion to Request Reassignment of Counsel and Leave to Represent Self to File an O'Dell Motion, authored by Mr. Smith, dated May 2022.
4. Letters written by Mr. Matthews to Mr. Smith on 12/19/2019, 1/03/2020, April 2021, 11/30/2020, and 12/04/2020.
5. Letters written by Mr. Smith to Mr. Matthews, dated 6/15/2020.
6. Several loose papers appeared as part of formal legal documents.

*2 of 12*



7. Decision Letter to Complaint Log # INC48751 Worcester Recovery Center and Hospital from Kathleen Wheel to Parties to the Complaint, dated 11/09/2021.
8. Defendant's Emergency Motion to Continue Hearing, not dated.
9. Notice of Appearance, not dated.
10. Civil Exhibit A, handwritten by Mr. Smith, dated 5/02/2022.
11. Certificate of Need for Admission, Worcester Recovery Center and Hospital, dated 3/25 and 3/26/2021.
12. Untitled document from Worcester Recovery Center and Hospital, date of treatment team meeting 3/30/2021.
13. Email communications between Ryan Matthews and Michael Patterson, dated 11/30/2020, 12/04/2020, and 12/23/2020.
14. Letter written by Attorney Schmitt to ADA Patterson, dated 12/19/2019.
15. Affidavit of Counsel, docket # 1972CR00006, signed on 5/22/2020.
16. Information Pertaining to Assault, Commonwealth of Massachusetts Sexual Assault Evidence Collection Kit, form 2B, not dated.
17. DNA Testing Report, Laboratory Case # 18-17791, dated 3/26/2019.
18. Page 44 of a document that includes a conversation between Mr. Patterson, and Detective Lobur.
19. Phone Sign Up list, not dated.
20. Letter written by Attorney Joyce to Mr. Smith regarding Smith v. Evangelides and Byrnes, dated 5/05/2022.
21. Extraction Report from Mr. Connor's phone, creation time 8/12/2020.

## CIRCUMSTANCES OF THE CURRENT EVALUATION:

Per records, since 3/25/2021, Ms. Smith has been adjudicated as incompetent to stand trial (IST) in relation to the index charges. Subsequently, he was admitted to Worcester Recovery Center and Hospital (WRCH) under section 16(a). Reportedly, at that time, his factual understanding was not considered an issue, but his deficits fell in his capacity to consult with his attorney, as he tended to present himself as the victim and became fixated on minor details to the extent that he could not appreciate his case from a broader picture. Since his arrest, Mr. Smith had seven appointed defense attorneys. Recently, Mr. Smith's current defense attorney (Ms. Garnett) filed for funds to hire an independent evaluator to reassess her client's CST. The fund was granted, but in addition, the Court ordered a Section 15(a) CST screening evaluation, which was conducted by Dr. Towers on 5/19/2022.

During a phone consultation with Attorney Garnett, it was reported since October 2021, when she began working with Mr. Smith, their interactions have been "up and down." Atty. Garnett elaborated that she has had multiple disagreements with her client, which recently led to "a complete breakdown in the communication." Noteworthy, despite these differences, she expressed doubts about previous IST opinions. See CST-related sections below for further information.

Per 15(a) screening evaluation, on 5/19/2022:

> Mr. Smith presented as alert and oriented, with somewhat pressured speech, and a "pissed off" mood. He denied any current suicidal or homicidal ideation, intent, or plan. He evidenced a clear factual understanding of his legal situation. Nonetheless, based on his current presentation, I continue to have significant concerns about his present ability to effectively work with counsel in his defense. This concern is based on his perseveration on specific aspects of his case (e.g., suing the detective he believes presented false information, viewing himself as the victim) to the exclusion of being able to focus on the issues of working with his attorney in an attempt to defend himself. It is acknowledged, however, that given his status of having been adjudicated incompetent to stand trial, he has not had to focus on readying himself for trial. His attorney has indicated that this makes it more difficult to know how difficult a time Ms. Smith would actually have, were she to need him to focus on trial preparation.

Dr. Towers opined that Mr. Smith required further assessment of CST-related abilities. Honorable Judge Gildea ordered Mr. Smith to be admitted to the DSCFMHC for a CST evaluation.

By Dr Munoz

Mr. Smith also knew about alternative pleas, following procedures, and possible outcomes. He stated that possible pleas were "guilty or not guilty." He indicated that a Guilty plea means that the defendant "says he did the crime," and can lead to a plea bargain that involves admitting the crime (even though the defendant might actually be innocent) to receive a less severe penalty. He indicated that a "not guilty plea" means that defendant says, "he didn't do the crime" and is followed by several stages (e.g., "pre-trial hearings, discovery") before the defendant can have a trial. He described each stage and then defined a trial as "when attorneys try to convince the Judge or the Jury with evidence, documents, and witnesses, and then they make the decision of guilty or not guilty." He was also aware of additional concepts, such as the right to avoid self-incrimination, the right to cross-examine witnesses, and the right to have a speedy trial. He also knew basic information about the Not Guilty by Reason of Insanity strategy, and potential implications (e.g., undefined period of inpatient or outpatient treatment for mental health) which he indicated depended on the current dangerousness of the defendant.

Mr. Smith also demonstrated an adequate **rational understanding** of the court proceedings against him by being able to use his factual knowledge and apply them to his current case in a rational and reality-based manner. He provided his factual account of the alleged incidents, which was free of delusional material, portrayed him in a favorable light, and was consistent with his preferable strategy. Although he has expressed seemingly paranoid ideation regarding his criminal case, when further assessed, these thoughts did not contain psychotic roots. That is, he expressed beliefs that there was a conspiracy to keep him as IST so he could not resolve his charges and to keep him incarcerated in order for the state to make a profit on his behalf. He talked about corrupted and unethical people working in the criminal justice system and affecting his criminal case. However, when these ideas were further explored, they do not seem to contain delusional roots. For example, he explained that the development of his thoughts about these alleged corrupted and unethical specific individuals involved in his case was based on unfavorable previous outcomes. He presented documentation supporting his beliefs. For example, when discussing his thoughts about the prosecution entering false information and the Grand Jury receiving misleading information, Mr. Smith produced several documents indicating that previous defense attorneys had agreed that these issues should be addressed and integrated as part of his defense strategy. These thoughts were not extended to the overall criminal justice system. Certainly, when he described his plans to fight his case, he described positive expectations; thus, suggesting that he did not have a general distrust for the system. Finally, Mr. Smith indicated that these specific participants have a history of acting unethically; therefore, he believed that their treatment toward him is not personal or individualized. Despite an overall cynical attitude toward the justice system, he reported being confident that with the right counsel, he is likely to succeed and obtain a favorable legal outcome. Thus, overall, his beliefs and attitudes toward the justice system do not appear delusional in nature and do not significantly impair his capacity or willingness to participate in court proceedings.

Mr. Smith demonstrated having the **capacity to consult with his attorney** and assist with the development of a defense strategy. He demonstrated being able to identify relevant and reality-based evidence and witnesses for each charge (consistent with the police reports). His preferable legal strategy included the introduction of relevant evidence, as well as entering relevant motions. Although he was reluctant to discuss other pleas (besides his preferable plea), he ultimately talked about a potential alternative course of action. Additionally, for the charges of Witness Intimidation, his preferable legal strategy was different and based on available evidence. When discussing factors he would take into consideration if he had to choose between a bench or a jury trial, he indicated that his opinion would depend on who is the Presiding Judge, as he had previous unfavorable experiences with some of them. He also said that he would consider jurors' perceptions about the nature of the allegations and how social and cultural biases might impact their verdict. When asked if he has considered representing himself, he stated, "No! I can't do it on my own; I am not an attorney." He further explained that he would only want to file the O'Dell Motion by himself, and then work with a defense attorney for every other legal decision and action, such as cross-examining witnesses. Finally, he was aware that the defendant must behave respectfully and quietly during court proceedings.

Incompetent to STM to Trial

9 of 12

While Mr. Smith has the cognitive and emotional capacity to assist his counsel, as in some cases of severe personality disorders, his maladaptive characterological traits make him a difficult person to interact with. For example, his sense of entitlement, arrogance, irritability, and overinflated ego has led to developing a pattern of interpersonal problems with multiple defense attorneys which ultimately resulted in them withdrawing from his case, or him firing them. He also tends to become upset and has threatened to sue many people in the justice system. He can be offensive and make derogatory statements when upset.

The current relationship with his defense attorney, Ms. Garnett, is not different. Mr. Smith complained that his seventh and most recent defense attorney, Ms. Garnett, has not yet submitted the motions that he had requested her to do (i.e., O'Dell motions, among other motions). Therefore, he indicated being unwilling to continue working with her. He further explained that before he could submit a motion to request reassignment of counsel, she informed him that she was withdrawing from his case. Certainly, during a phone consultation, Attorney Garnett indicated that given that there has been "a complete breakdown in the communication," she would be withdrawing from Ms. Smith's case. Asked to elaborate, she referred that Mr. Smith has had many disagreements with her and has threatened to file a lawsuit against her. Asked about Mr. Smith's CST, she stated, "I am not convinced that he is incompetent to stand trial." Further, she described his legal arguments as "reasonable" and did not report concerns about bizarre thoughts or delusions affecting his CST. Instead, she indicated that her concerns were related to Mr. Smith's mental rigidity. For example, she indicated that Mr. Smith wants the motions to be redacted based on his thoughts of what is correct and not based on legal advice. She said, "it's a matter of presentation, not content." In addition, she indicated concerns that in the past, Mr. Smith had filed documents in court (in civil matters) that included privileged information about potential defense strategies, which she considered could compromise his defense. She declined to provide further information stating attorney-client privileges.

During the current evaluation, when discussing his unsuccessful history of working with seven different defense attorneys, Mr. Smith expressed his beliefs that previous defense attorneys have refused to follow this defense strategy because of potential negative implications in the Plymouth Court System from the possibility of impeaching a corrupted district attorney (e.g., this might lead to questioning and investigating other cases where such DA was involved) and investigating unethical detectives and police officers. When discussing the alleged mental rigidity and interpersonal issues with defense attorneys, he argued that his attorneys have not dealt with his case competently. Thus, he had to pressure them to work diligently and with integrity, which eventually led to his threats to sue them and then the termination of their services. When asked to further explain the roots of this pattern, Mr. Smith indicated his beliefs that they did not work diligently in his case because of a conflict of interest. That is, he considers that no defense attorney from the Cape Cod area will challenge the validity of the data introduced by police officers and district attorneys (referring to his plans to file an O'Dell Motion and to present proof that exculpatory evidence had been withheld). While this argument might be seen as conspirator-like, he clarified that this is an issue rooted in the nature of politics in the justice system, indicated that there are defense attorneys that work with integrity, and stated that this is not a personalized or individualized issue against him. Finally, Mr. Smith expressed his disagreement about the potential prejudicial effects of having disclosed privileged data in his civil matters by noting that the information he disclosed is consistent with the information he plans to disclose in his criminal matter; therefore, it should not compromise his criminal matter.

Noteworthy, despite the prevalence of his maladaptive personality features, Mr. Smith demonstrated having the capacity to maintain good behavioral and emotional control and to engage in relevant and reality-based conversations about his criminal case. Although he tends to become irritable and perseverate on fixed ideas that he believes are relevant to his case, these ideas seemed reality-based and are not explained by a mental illness or cognitive issues. Instead, the fixation on his ideas is accounted for by personality features fueled by distress secondary to his current legal circumstances and a history of failing to work with attorneys.

Based on all available information, it is my opinion that Mr. Smith presents with the abilities commonly seen among individuals found CST. That is, abilities to consult with his lawyer with a reasonable degree of rational understanding and with a factual and rational understanding of the proceedings against him.

STEPHEN LOESCH
Attorney at Law
4 Howland Lane
East Sandwich, MA 02537
508 744 7073 (office)
508 789 0110 (cell)
stephenloesch@aol.com
July 20, 2022

Steven L. Smith
#2203270
Suffolk County Jail
200 Nashua St.
Boston, MA 02114

Mr. Smith:

*Yeah, The Judge do TOLD Him To it against my objectors!*

Enclosed is the O'Dell motion to dismiss I have prepared, with affidavit.

Also, my motion to withdraw (at your request).

I will not file the O'Dell motion unless you approve. I will bring it to Court on August 9 and file it then only if you want it filed. It's your call. You can let me know in advance by putting your decision in writing, or you can decide on August 9 in Court.

Sincerely,

Steve Loesch

*I don't Appprove! As He left out How The cop e DA Lied!!*

COMMONWEALTH OF MASSACHUSETTS

*[handwritten: Cop's]*

Barnstable, ss

Commonwealth

*[handwritten: This Lame s']*

*[handwritten: O'Dell doesn't include]*

V

Steven L. Smith

Barnstable Superior Court

Indictment No. 19 – 006

*[handwritten: perjury DAS. or unethical]*

MOTION TO DISMISS COUNTS ONE AND TWO

Now comes the defendant and asks that this Court dismiss counts one and two of this indictment, alleging rape and indecent assault and battery, on the grounds that the Commonwealth's presentation to the grand jury omitted exculpatory evidence that so seriously tainted the process that the indictments should not be allowed to stand. Further, that the omission appears to have been willful and egregious to the extent that the Commonwealth should be precluded from seeking to reindict.

Commonwealth v. O'Dell, 392 Mass. 445 (1984).

*[handwritten: Colloquys!]*

In support of this motion defendant states that:

1. He is charged with rape and indecent assault and battery on a 15 year old boy. The alleged victim reported that on July 5, 2018 while he was sleeping in a car next to the defendant he was awoken to find Mr. Smith performing oral sex on him. Specifically, that the defendant had the alleged victim's penis in his mouth.
2. The boy reported this to the police immediately, and gave a thorough statement to the police at the police station.
3. A Provincetown police officer then drove the alleged victim to Cape Cod Hospital to be examined as a sexual assault victim.
4. At the hospital the alleged victim was examined by Judy McCarthy, FNP-C. Ms. McCarthy filled out a form, called "Form 2 B" "Commonwealth of Massachusetts Sexual Assault Evidence Collection Kit." The Kit number is 51207. On this form, in response to a list of questions, the alleged victim answered that since the time of the alleged assault he had not changed clothes, had not bathed, had not showered, and had not washed off. Copy of Form 2 B attached as defendant's exhibit #1.
5. A criminalistic report from the Massachusetts state police lab, dated August 21, 2018, in reference to Kit number 51207 from Cape Cod Hospital summarizes the results of biological findings as follows: the alleged victim's genital area was swabbed six times for biological evidence and that NO SALIVA WAS DETECTED. A copy of the criminalistic report is attached as defendant's exhibit # 2.
6. This case was presented to a grand jury on January 4, 2019. Detective Meredith Lobur of the Provincetown police department was the only witness. The existence of a sexual assault exam is not mentioned until a grand juror asks about it. G.J. p. 44, lines 22-23. Detective Lobur testifies that the results were "inconclusive…the exam was performed some time after." G.J. p. 44, lines 1-6. "Some time" is not defined or explained – the grand jurors were not told that the alleged victim was examined on the same day of the alleged assault, that he was in the presence of a police officer until he was examined at the hospital, and that he had not washed off.

*[handwritten: I am NOT ALLOWING Him to File it!!]*

7.  Detective Lobur then acknowledges that the alleged victim's genital area was swabbed and that no sperm cells or seminal fluid was detected. This is right after she testified that the alleged victim did not ejaculate. G.J. p. 44. Pages 43 – 45 of the grand jury testimony is attached.

8.  The grand jury is not told that the criminalistic report found no saliva on the alleged victim's genital area.

9.  Defendant asks that the Court read pages 43-45 of the grand jury testimony in their entirety so as to get a sense of the almost incoherent "examination" of Detective Lobur and the evasive and misleading answers to questions about the biological evidence. Detective Lobur knew no saliva was detected; she knew that the lack of sperm or seminal fluid was a non-answer. She knew that the alleged victim was examined as soon as was practicable and that he had not washed off. These facts are not minor matters that could be considered exculpatory. These facts are the heart of the matter in this case of alleged oral rape.

Commonwealth v O'Dell makes clear that while the Commonwealth does not have to "… in all instances … bring exculpatory evidence to the attention of grand juries … [however] an unfair and misleading presentation … the withholding of [evidence] … that so seriously tainted the presentation … that the indictment should not have been allowed to stand." And if the presentation "… was so willfully deceptive or otherwise egregious that the Commonwealth should be precluded from seeking to reindict."

Because the assistant district attorney, in his leading questions, and detective Lobur in her answers, never told the grand jury that no saliva was detected, and because the topic, first brought up by a grand juror, was discussed for over a page and a half of testimony, the only reasonable conclusion is that the omission was willfully deceptive and therefore egregioius.

Wherefore, defendant asks that counts one and two of the indictments be dismissed.

Defendant,

By his attorney,

Steve Loesch
4 Howland Lane
East Sandwich, MA 02537
508 744 7073 office
508 789 0110 cell
BBO# 547340

July 20, 2022

Mr. Loesch Det.
excludes How the
Lobur lied to the
grand jury. exclude
The unethical
colloguy. They
did to get the
indictment!

**FORM 2B**
DO NOT FAX THIS PAGE

# INFORMATION PERTAINING TO ASSAULT
Commonwealth of Massachusetts Sexual Assault Evidence Collection Kit

KIT NUMBER ---- label here ----
51207

DO NOT WRITE PATIENT'S NAME ON THIS FORM;
DO NOT RUN THIS FORM THROUGH ADDRESSOGRAPH

## A. PERTINENT/ RECENT HEALTH HISTORY:

Has the patient undergone recent (within 4 weeks) medical or gynecological procedures or treatments which may affect physical findings or evidence collection? ☐ Yes ☐ No
*If yes, describe:* N/A

Patient menstruating at the time of assault? ☐ Yes ☐ No   N/A   Currently? ☐ Yes ☐ No   LMP _____
Patient's tampon or sanitary napkin to be included in kit? ☐ Yes ☐ No

Has the patient had consensual sexual intercourse in the past 120 hours/5 days? ☐ Yes ☐ No
*If yes, specify the number of hours since consensual intercourse ended:* N/A

Has the patient used any type of contraception in the past 24 hours? ☐ Yes ☐ No
*If yes, specify type:* N/A

## B. SINCE THE TIME OF THE ASSAULT HAS THE PATIENT:

| | | |
|---|---|---|
| a. Changed clothes? ☐ Yes ☑ No | g. Taken in fluid? ☑ Yes ☐ No |
| b. Bathed? ☐ Yes ☑ No | h. Vomited? ☐ Yes ☑ No |
| c. Showered? ☐ Yes ☑ No | i. Smoked cigarettes? ☐ Yes ☑ No |
| d. Washed off? ☐ Yes ☑ No | j. Urinated? ☑ Yes ☐ No |
| e. Brushed teeth? ☐ Yes ☑ No | k. Defecated? ☐ Yes ☑ No |
| f. Used mouthwash? ☐ Yes ☑ No | l. Brushed/washed hair? ☑ Yes ☐ No |

## C. WEAPONS/FORCE USED: *(Check all that apply as per patient report and/or physical findings; describe the incident and/or body part involved.)*

☐ Verbal threats Describe: _____
☐ Bites Describe: _____
☐ Burns Describe: _____   N/A
☐ Knife Describe: _____
☐ Restraints Describe: _____
☐ Hold down/Body weight Describe: _____
☐ Other weapons Describe: _____
☐ Drugs Describe: _____

☐ Strangulation Describe: _____
☐ Hitting Describe: _____
☐ Gun Describe: _____
☐ Blunt object Describe: _____   N/A
☐ Chemical(s) Describe: _____
☐ Other physical force Describe: _____
☐ Alcohol Describe: _____
☐ Unsure

## D. ACTS DESCRIBED BY THE PATIENT:

Did ejaculation occur?
Vaginally? ☐ Yes ☑ No ☐ Unsure
Anally? ☐ Yes ☑ No ☐ Unsure
Orally? ☐ Yes ☑ No ☐ Unsure
Externally? ☐ Yes ☑ No ☐ Unsure

If externally, where?
☐ On the patient's body. Where? _____
☐ On an object. What object? Where? _____
☐ Other: _____
☐ Unsure

Did assailant(s) use any substance as lubrication (saliva is considered lubrication)? ☐ YES ☑ NO ☐ UNSURE
*If yes, specify:* _____

Did assailant(s) lick, spit or make other oral contact with the patient? ☐ YES ☐ NO ☐ UNSURE
*If yes, describe location:* Penis. was in assailants mouth

Was there prolonged or forceful touching of the patient's skin by the assailant's bare hands or fingers? ☑ YES ☐ NO ☐ UNSURE
*If yes, describe location:* Hands

Did assailant(s) attempt to strangle patient? ☐ YES ☑ NO ☐ UNSURE
*If yes, describe:* _____

Was there loss of consciousness? ☐ YES ☑ NO ☐ UNSURE
*If yes, describe:* _____

Was the patient incontinent? ☐ YES ☑ NO ☐ UNSURE
*If yes, Bowel:* ☐ YES ☐ NO   *Bladder:* ☐ YES ☐ NO

Were there any children present during the assault? ☐ YES ☑ NO ☐ UNSURE
*If yes, describe the relationship to the patient:* _____

Printed name of medical provider or S.A.N.E. _Judee McCarthy FNP-C_

Signature of medical provider or S.A.N.E. _Judee McCarthy FNP-C_

If applicable, certified number of the S.A.N.E. _1034-6_

EXHIBIT I



CHARLES D. BAKER
*GOVERNOR*

KARYN E. POLITO
*LIEUTENANT GOVERNOR*

DANIEL BENNETT
*SECRETARY*

COLONEL KERRY A. GILPIN
*SUPERINTENDENT*

The Commonwealth of Massachusetts
Department of State Police

Crime Laboratory
124 Acton Street
Maynard, MA 01754
Tel 978 451 3500   Fax 978 451 3401

## CRIMINALISTICS REPORT

Laboratory Case Number: 18-17791
Victim(s): Connor Peterson
Suspect(s): Steven Smith
Report To: Detective Meredith K. Lobur, Provincetown Police Department
Report Cc: ADA Sharon Thibeault, Cape and Islands District Attorney's Office

Report Date: August 21, 2018
Incident Number: 18-106-AR
Kit Number: 51207
Town: Provincetown

### SUMMARY OF BIOLOGICAL FINDINGS

| Item Number | Type – Location (QTY) | Confirmatory Testing | Screening Testing¥ | | Possible skin cell collection | Preserved for potential DNA Analysis |
|---|---|---|---|---|---|---|
| | | Sperm Cells | Seminal Fluid Protein | Saliva | | |
| 1-1-01 | Additional Swabs (6) (Penis/Meatus/Scrotum) | ND | ND | ND | === | === |
| 1-1-02 | Additional Swabs (2)  (Right hand) | ND | ND | + | === | √ |
| 1-1-03 | Additional Swabs (2)  (Left hand) | + | === | + | === | √ |

KEY:  + Positive
ND None Detected
=== Not examined at this time/Not preserved
¥ A screening test indicates, but does not confirm the presence of the biological material listed.

## COMMENTS

Items selected for DNA analysis are listed in the enclosed DNA Analysis Worksheet.

Further analysis upon request. Comparative analysis requires the submission of appropriate standards.

Please direct all requests to the Case Management Unit (978) 451-3440.

NO SALIVA ON HIS JUNK!!

43

1    the two days prior to July 4, Smith offers Connor $500 if

2    Connor would allow Smith to perform oral sex on him, that

3    conversation was in person, that was not -- Connor never

4    suggested that was texted?

5        DET. LOBUR:  Correct.  No.  He said that was verbal

6    conversation.

7        MR. PATTERSON:  Okay.  Does that ultimately answer

8    your question?

9        GRAND JUROR:  Yes.  Thank you.

10       GRAND JUROR:  That exhibit is from whose phone?

11       MR. PATTERSON:  This was recovered from Mr. Smith's

12   phone.

13       DET. LOBUR:  Mr. Smith's phone.

14       GRAND JUROR:  Did you see the matching conversation on

15   Connor's phone or not?

16       DET. LOBUR:  Connor's phone was sent to me and

17   downloaded and they are similar.

18       MR. PATTERSON:  Fair to say, Detective, there have

19   been some technological difficulties in examining all of

20   Connor's phone at this point?

21       DET. LOBUR:  Correct.

22       GRAND JUROR:  Did Connor have any kind of sexual

23   assault exam by any medical professional?

24       DET. LOBUR:  Yes, he did.  He went to Cape Cod

25   Hospital.

44

1      GRAND JUROR:  Do we know the results based on that?

2      MR. PATTERSON:  What do you know about the results of

3   the sexual assault examination, Detective?

4      DET. LOBUR:  There did not appear to be anything

5   conclusive but again, Connor said he didn't ejaculate and

6   that the exam was performed some time after.

7      MR. PATTERSON:  Fair to say that exam, physical

8   examination that occurred, was based upon what Connor

9   reported happened; correct?

10     DET. LOBUR:  Correct.

11     MR. PATTERSON:  Based upon what Connor reported

12  happening, swabs were taken of both Connor's hands,

13  Connor's right and left hand?

14     DET. LOBUR:  Correct.

15     MR. PATTERSON:  And swabs were taken of his genital

16  region?

17     DET. LOBUR:  Yes.

18     MR. PATTERSON:  Was any swabs or physical examination

19  for DNA or forensics able to be taken of Steven Smith?

20     DET. LOBUR:  No.  His clothes were seized and sent to

21  the lab.

22     MR. PATTERSON:  And with respect to the swabbing of

23  Connor's genital region, fair to say there was no

24  detection of sperm cells or seminal fluid?

25     DET. LOBUR:  No.

1      MR. PATTERSON:  With respect to swabbing of his left

2  hand, fair to say the lab did detect the presence of sperm

3  cells?

4      DET. LOBUR:  Correct.

5      MR. PATTERSON:  And there was saliva detected on both

6  Connor's right and left hand?

7      DET. LOBUR:  Yes.

8      MR. PATTERSON:  At this point based upon the stage of

9  the investigation and court proceedings, be fair to say

10  that no DNA sample has been sought or ordered from

11  Mr. Smith for comparison purposes?

12      DET. LOBUR:  No.

13      GRAND JUROR:  That was going to be my follow-up

14  question about swabbing Mr. Smith's DNA, mouth for cells,

15  they did not do that, is that what you are saying?

16      DET. LOBUR:  For comparison, not at this point.

17      GRAND JUROR:  Not at this point.  Is it way after the

18  fact?  I don't think they would be able to get anything;

19  right?

20      MR. PATTERSON:  We have to be careful with questions.

21      GRAND JUROR:  I suppose this is kind of unrelated.

22  Why does this say, "Hey Steven, I never caught your last

23  name."  And Steven says "C-O-B-B."

24      MR. PATTERSON:  Do you know the answer to why it says

25  that or speculating?



*The Commonwealth of Massachusetts*
*Executive Office of Health and Human Services*
*Department of Mental Health*
*Central Mass Area*
*Worcester Recovery Center and Hospital*

**CHARLES D. BAKER**
*Governor*

**KARYN E. POLITO**
*Lieutenant Governor*

**MARYLOU SHUDDERS**
*Secretary*

**BROOKE DOYLE**
*Commissioner*

**JERRY JULIANO**
*Acting Area Director*

Reply to:
Worcester Recovery Center
and Hospital
309 Belmont Street
Worcester, MA  01604
Phone (508) 368-4000
Fax (508) 363-1515
TTY (508) 752-0127
www.mass.gov/dmh

*[handwritten annotations overlaid: "I already paved one of my Lesser Complaint against W.R.C.H", "EXHIBIT H", "prains privacy rights Were Violated Yet I can't serve them W.R.C.H", "(U) Clerks dont answer!"]*

To:        Parties to the Complaint

From:      Kathleen Wenzel
           Chief Operating Officer

Date:      November 09, 2021

Re:        Decision Letter to Complaint Log #INC48751

The Complaints Department received this complaint on November 01, 2021.  The complaint alleges that the patient was forced to call his attorney on the phone in a common area without any privacy.

During the fact-finding process, three individuals with information pertinent to the complaint were interviewed. Relevant documentation/video was also reviewed.

**FINDINGS**
The fact-finding process addresses whether staff contributed to a situation that is dangerous, illegal, or inhumane. The findings are as follows:

- Based on witnesses' statements it can be determined that the patient was forced to use a phone in a common area to call his lawyer.

- Based on witnesses' statements it can be determined that staff on the unit fail to provide the necessary privacy to the patient as mandated per MGL; Chapter 123, Section 23 by not allowing reasonable access to a telephone to make and receive confidential telephone calls and to assist when desired and necessary.

- It can be determined that staff did contribute to an incident and/or condition that was dangerous, illegal, and/or inhumane. as defined by DMH Regulations 104 CMR 32 00.

- The complaint is substantiated

Please contact your Human Rights Officer should you have any questions about this letter.

## CONCLUSION
I agree with the findings as described.  I shall consider this matter closed after the following action(s).

## ACTION

Worcester Recovery Center and Hospital (WRCH) COO or designee shall review these findings and determine what action should be taken.

Documentation of completion of this action shall be forwarded to the WRCH Complaints Dept. Attn: Tara Callahan no later than 11/24/2021.

## RECONSIDERATION
Per 104 CMR 32.04 (7), you or any party to the complaint have the right to request reconsideration of this decision.  You or the parties must request reconsideration in writing within ten (10) business days of receipt of the decision.  The request must be detailed and indicate that an essential witness was not interviewed or an important fact was not considered, the decision is not reasonably supported by the facts, or the decision is based on an erroneous interpretation of applicable law or policy.  The final decision shall be issued within ten (10) business days of the receipt of the request for reconsideration or twenty (20) business days if further fact-finding is necessary.  Reconsideration is not required before filing an appeal.  The request for reconsideration should be sent to:

> Kathleen Wenzel
> Chief Operating Officer
> Department of Mental Health
> Worcester Recovery Center and Hospital
> 309 Belmont Street
> Worcester, Massachusetts 01604

In addition to reconsideration, an appeal may be filed by the client or an individual or group action on behalf of a client or a client's estate.  Other parties may not use the appeal process. All appeals must be submitted in writing ten (10) business days after receipt of the decision. The appeal must be detailed and indicate that an essential witness was not interviewed or an important fact was not considered, the decision is not reasonably supported by the facts, or the decision is based on an erroneous interpretation of applicable law or policy.  The decision on the appeal shall be given to the parties within thirty (30) business days from the receipt of the appeal unless further investigation is necessary in which case the decision shall be issued within ten (10) days of receipt of the new report.  The request for appeal should be completed on an appeal form and sent to:

> Jerry Juliano, Acting Area Director
> Department of Mental Health
> Central Mass Area Office
> 361 Plantation Street
> Worcester, MA  01605

cc:   Office of Investigations
      Casefile
      HRO(s)

*I TOLD HIM TO file
Odell ASAP in June 2020
come November 2020
He argues I'm
not Competent
Instead of doing it!*

*yet Mr.
Loesch
Filed
prepares
one
Last
June
2022*

*EX
96*

Steven L Smith #17984
Berkshire County Jail
467 Cheshire Road
Pittsfield, MA 02101

Ryan J Matthews
One Park Place
Plymouth, MA 02360

June 15, 2020

Dear Ryan:

Hello! It was good speaking with you this last Friday. Thank you for all that you are doing on my behalf. I hope I don't seem ungrateful, but bear in mind, this is another summer I am spending incarcerated for a crime I did not do! I am more than anxious, as I turn 60 on July 16th, to get out of jail and on with my life….and I still have to deal with New York…

I asked Mr. Schmitt, back in November 2019, to file and Odell Motion! I doubt we will find a similar case involving phone records. I do not think it is necessary. I would like you to proceed ASAP with filing an Odell Motion.

I have included some cases for your consideration at the end of this letter.

I would like you to review the enclosure. Please note that Det. Lobur did not list Connor's phone records. I wish to make the argument that she KNOWINGLY kept District attorney Ben Vaneria from Connor's phone records. He argued for more time to convene a Probable Cause Hearing in November 2018 because he "was waiting on the phone dumps."

Colleen Duarte argued, "It does not take 5 months to do phone dumps." Indeed not. Det. Lobur had both phone dumps delivered to her by the BCI by August 9th 2018!

There is a higher standard for Probable Cause Hearings than Grand Jury Indictments.

What Det. Lobur did, with respect to withholding phone records… she intentionally withheld the phone records so that I could not have a Probable Cause Hearing during which the matters of the deleted texts would have made a difference!

She withheld the phone records until I was indicted. Then she testifies at the Grand Jury Hearing that the phone records match…. Then she proceeds to keep the truth that they do not match for 22 months. Utilizing "driver software" and encryption methods!

Perhaps you ought to get a copy of my Nov 2018 Orleans Court date transcript. Because Colleen argued against the DA's request for another 30 day continuance as "he was awaiting the phone dumps." Det. Lobur had them since August 2018.!! I assert, she knew they did not match, she knew Connor illegally deleted texts, but maliciously kept it from the District Attorney, with the intention of covering up this truth, by taking the stand at my indictment and lying!

She knew, also, that nobody could find out the truth, because she alone had the "Driver software" necessary to access the phone dump disc!

## Again, I appreciate all that you are doing on my behalf!

I would like you to INCLUDE the above argument. Det. Lobur did more than lie to the Grand Jury. She orchestrated this whole thing, maliciously!

Steven L Smith #17984
Berkshire County Jail
467 Cheshire Road
Pittsfield, MA 02101

We also need to include the way in which they worked in cahoots to deceive the Grand Jury.

1. There were 3 different tests to the Criminalistics report but Da Patterson failed to mention that NO Saliva WAS Detected on his genital region.

2. He also failed to mention Form 2B in which he told Judee McCarthy LPN that he and not washed off, showered, or bathed since the alleged incident.

3. He failed not only to present this crucial exculpatory evidence but he also failed to instruct the Grand Jury as to its significance!

4. He also, maliciously, steered the Grand Jury Attention...when Lobur said the phone records were similar...he supported her lies by interjecting his input about the phone technology issues. It was a means of diversion!

5. He pulled a similar stunt when he focused on the saliva found on his hands. However, I was not being charged with hand licking. Even if the saliva on his hands turned out to be mine, how was that proof of oral rape?

**Det. Lobur and Da Patterson worked in cahoots to indict me. They intentionally misled and lied to the Grand Jury.**

Det. Lobur made sure I did not get a Probable Cause Hearing! Consider this:

"However, in Myers, supra 856, we were interpreting G.L. c 276, 38, and we concluded that that statue mandated that Probable Cause Hearings in a district Court be conducted as Trials. There is no similar statue governing grand Jury proceedings. Instead, [392 Mass 452] grand Jury proceedings have a long history in which Jude al review for sufficiency of the evidence has sharply been limited."

I will end this here. I would guess you are familiar with the cases below. Nevertheless, just in case, I have put a few that seem appropriate to cite in our Motion. I believe we have enough to warrant a dismissal of the indictment! Moreover, I would like it filed ASAP.

# Thanks!

Steven L Smith

In considering the claim that the Commonwealth's failure to provide the grand jury with instructions on the legal significance of the mitigating evidence prevented that body from properly evaluating the evidence, the starting point is the general principle that ``[t]he extent of the [prosecutor]'s obligation to instruct the [g]rand [j]ury . . . must be defined with reference to the role of that body,'' *Walczak*, 463 Mass. at 824 (Lenk, J., concurring), quoting *People* v. *Valles*, 62 N.Y.2d 36, 38, 464 N.E.2d 418, 476 N.Y.S.2d 50 (1984); that is, ``to protect the innocent, and bring to trial those who may be guilty,'' *State* v. *Hogan*, 336 N.J. Super. 319, 341, 764 A.2d 1012 (App. Div.

Steven L Smith #17984
Berkshire County Jail
467 Cheshire Road
Pittsfield, MA 02101

The treatment of exculpatory evidence withheld from the grand jury is particularly instructive in determining whether a prosecutor has an obligation to instruct the body on certain possible defenses. See Hogan, 336 N.J. Super. at 341-342 (no separate obligation to instruct the grand jury on possible defenses if accused could otherwise have failed to present exculpatory evidence). "Prosecutors are not required, however, to present every item of exculpatory evidence to a grand jury." McGahee, 393 Mass. at 747 . . . Rather, the integrity of the grand jury proceedings has been affected if . . . the omitted exculpatory evidence "would likely have affected the grand jury's decision to indict." Commonwealth v. Clemmey, 447 Mass. 121, 130, 849 N.E.2d 844 (2006). See Commonwealth v. Connor, 392 Mass. 838, 854, 467 N.E.2d 1340 (1984) (" if the grand jury were not made aware of circumstances which undermine the credibility of evidence that is likely to have affected their decision to indict, then the appropriate remedy may be dismissal of the indictment"). See also O'Dell, supra (" the withholding of a portion of the defendant's statement distorted the portion that was repeated to the grand jury in such a way . . . as to give the grand jury the impression to that body that the indictment should be returned"). . . . Similarly, the presentation of false or misleading evidence only impairs . . . that indictment where the evidence was presented with the knowledge that it was false, with the express purpose of obtaining an indictment, and "probably influenced . . . the grand jury's determination to hand up an indictment." 393 Mass. at 840.

It stands to reason, then, that the same is true for instructions regarding exculpatory evidence; that is, the integrity of the grand jury proceedings would be impaired by the lack of instructions only where providing them ``would likely have affected the grand jury's decision to indict.'' Clemmey, 447 Mass. at 130. The defendant must establish that such instructions likely would have given effect to a complete defense, resulting in a no bill. See Hogan, 336 N.J. Super. at 341-342 (adopting rule that prosecutors are required to instruct on possible defenses only where, if believed, defense would result in finding of no criminal liability). See also Bank of Nova Scotia v. United States, 487 U.S. 250, 256, 108 S. Ct. 2369, 101 L. Ed. 2d 228 (1988), quoting United States v. Mechanik, 475 U.S. 66, 78, 106 S. Ct. 938, 89 L. Ed. 2d 50 (1986) (``dismissal of [an] indictment is appropriate only 'if it is established that the [omission] substantially influenced the grand jury's decision to indict,' or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such [omission]'').

First, and foremost, it does not comport with our case law. As explained supra, the conclusion that the grand jury process is impaired only if the omitted legal instructions likely would have {483 Mass. 10} resulted in a no bill is based on prior holdings of this court pertaining to withheld exculpatory evidence. And these prior decisions have held that the failure to present exculpatory evidence impairs the integrity of the process only where the omitted information ``would likely have affected the grand jury's decision to indict,'' Clemmey, 447 Mass. at 130, not, as the dissent contends, if the omitted evidence might have caused the grand jury to indict for a lesser offense. See Mayfield, 398 Mass. at 621 (presentation of false or misleading evidence only impairs integrity of grand jury process if, among other things, it ``probably influenced the grand jury's determination to hand up an indictment'').[7]

It is true that the intent of the prosecutor presenting the case to the grand jury is an important factor in determining whether {398 Mass. 13} dismissal of an indictment is required in circumstances like this. In assessing grand jury proceedings where false information was provided, or exculpatory evidence was withheld, we have required a showing that the conduct of the prosecutor was intentional and done for the purpose of obtaining an indictment. See Clemmey, 447 Mass. at 130, and cases cited; Mayfield, 398 Mass. at 621, and cases cited. In other words, the court must consider whether the prosecutor had actual possession or knowledge of the evidence, see Wilcox, 437 Mass. at 37, and, if so, whether the prosecutor withheld the

evidence for valid reasons unrelated to the indictment. See *LaValle*, 414 Mass. at 150 (disclosure would have revealed identity of police informant).

The grand jury is "an integral part of the court," and judges have a "duty to prevent interference with [grand jurors] in the performance of their proper functions, to give them appropriate instructions, and to assist them in the performance of their duties" (citation omitted). *Matter of Pappas*, 358 Mass. 604, 613, 266 N.E.2d 297 (1971), aff'd sub nom. *Branzburg* v. *Hayes*, 408 U.S. 665, 92 S. Ct. 2646, 33 L. Ed. 2d 626 (1972). We have long recognized that a prosecutor does not have the discretion to conceal important exculpatory or mitigating evidence where doing so would impair the integrity of the grand jury. See *Walczak*, 463 Mass. at 822

{387 Mass. 160} {439 N.E.2d 246} This is an appeal by the Commonwealth from so much of an order of a Superior Court judge as dismisses without prejudice thirty-seven indictments against the defendants, Keith Salman and Alvin Barton. In 1687 Mass. 161} The judge's order addressed a motion to dismiss a total of sixty-one indictments which charged, inter alia, armed robbery, assault and battery by means of a dangerous weapon. Thirty-two of the sixty-one indictments were against Barton; twenty-nine were against Salman. The judge denied the defendants' motion as to thirteen of the indictments, and the Commonwealth was free to proceed to trial against the defendants on those indictments. Another eleven indictments were dismissed without objection by the Commonwealth. The remaining thirty-seven indictments, which are the subject of this appeal (nineteen against Barton and eighteen against Salman), were dismissed, reserving to the Commonwealth, however, the right to reindict within the period permitted by the statute of limitations and on evidence other than that originally presented to the grand jury. We affirm the judge's order.

Since, as will be seen, our conclusion is based in large part on the special circumstances of this case, we state the facts in appeal detail. On June 17, 1980, Salman and {439 N.E.2d 247} Barton were arrested and charged with having committed a number of armed robberies. In November of the same year a Suffolk County grand jury returned sixty-one indictments against the defendants. Most of the sixty-one indictments were obtained solely as a result of the testimony of only one grand jury witness, Detective Arthur Linsky of the Boston police department.

On June 25, 1981, the defendants filed a motion to dismiss the indictments, alleging as grounds therefor that false testimony had knowingly been presented to the grand jury, that the integrity of the grand jury process had thereby been impaired, and that all of the indictments should be dismissed as a prophylactic measure. Attached to the defendants' motion were minutes of certain grand jury proceedings. These minutes, which have been made part of the record in this case, show that an assistant district attorney for Suffolk County presented before the grand jury, in November, 1980, evidence suggesting that one Susan Condry had been robbed by the defendants Barton and Salman. {387 Mass. 162} The evidence was presented through the sworn hearsay testimony of Detective Linsky. He testified that on June 11, 1980, Condry was robbed by two black males. Detective Linsky further testified that twenty-five photographs were shown to Condry and that she identified Barton and Salman as her assailants. Susan Condry did not testify before the grand jury. The grand jury returned two indictments against the defendants for robbery.

## COMMONWEALTH OF MASSACHUSETTS

PLYMOUTH, SS

SUPERIOR COURT DEPARTMENT
BROCKTON DIVISION
CIVIL ACTION NO.: 2283CV00130

STEVEN L. SMITH,
    Plaintiff

v.

SHERIFF JAMES CUMMINGS,
CAPT. HENNESSEY, KITCHEN SUPERVISOR,
TRINITY FOOD SERVICES, SUPERVISOR
(Unknown Party),
All in Official/Individual Capacity,
    Defendants.

### DEFENDANTS' EMERGENCY MOTION TO CONTINUE HEARING

NOW COME the Defendants, Barnstable County Sheriff James Cummings, and Captain

Hennessey (collectively, the "Barnstable County Sheriff's Office," or ""BCSO"), and hereby

move for an order to continue, to April 28, 2022, the Court's hearing on the Plaintiff's Motion to

Request Court Order to Direct Defendants to Stop Denying Access To Court (the "Motion

Hearing"). As grounds, the BCSO states that its undersigned counsel will be traveling out of

state on vacation throughout the week of April 18th, including on April 20th, and is the only

attorney from his office with the necessary designation and authority to appear in Court on

behalf of the BCSO in the instant action. Further, the modest requested eight-day extension

would neither unduly delay the instant proceedings nor otherwise accrue to the detriment of any

party to this instant matter.

1294455.v1

For these reasons, the BCSO respectfully requests that the Court issue an order allowing the

instant motion to continue the Motion Hearing to April 28, 2022.

Respectfully,

JAMES M. CUMMINGS and CAPTAIN
SCOTT HENNESSEY, BOTH OF THE
BARNSTABLE COUNTY SHERIFF'S
OFFICE, AN ENTITY OF THE
COMMONWEALTH,

By their attorney,

MAURA HEALY
ATTORNEY GENERAL

Peter L. Mello (BBO# 659680)
(pending SAAG appointment)
pmello@mhtl.com
Murphy, Hesse, Toomey & Lehane LLP
300 Crown Colony Drive, Suite 400
Quincy, MA 02169
Tel. No. (617) 479-5000
Fax. No. (617) 4796469

## CERTIFICATE OF SERVICE

I, Peter L. Mello, hereby certify that on this 12th day of April 2022, I served a true copy
of the within document via first class mail to the Plaintiff at the following address:

Inmate Steven Smith #2201409
Suffolk County Sheriff's Department
200 Nashua Street
Boston, MA 02114

Peter L. Mello

1294455.v1

6  STAFF Caught Lying

**RESOLUTION OF COMPLAINT - 104 CMR 32.04**
**TO BE COMPLETED WITHIN 10 DAYS**

a)

A  Group!

**PUBLIC LOG NUMBER:** INC37548          **FACT FINDER:** Diogenes Santiago

**DATE OF COMPLAINT:** 04/12/2021         **DATE OF INCIDENT:** 04/09/2021

**DATE ASSIGNED:** 04/12/2021            **DATE OF REPORT:** 04/20/2021

**PATIENT NAME(S):** Steven Smith          **PCO:** Sarah Maker

**OTHER INDIVIDUAL:** ▓▓▓▓▓          EXHIBIT B

TO MOTION TO Include 6-26-2022

**SUMMARY OF ALLEGATION:** The complaint alleges that a peer is threatening the patient and the patient has notified his social worker that he is in fear for his safety.

**PERSONS INTERVIEWED**

| NAME | TITLE / ROLE | DATE INTERVIEWED |
|---|---|---|
| a) Steven Smith | Patient/Complainant | 04/13/2021 |
| b) Sara Maker | RN/PCO | 04/13/2021 |
| c) Sherry Hannon | LICSW/Witness#1 | 04/14/2021 |
| d) Alade Olewaseun | MHW/Witness #2 | 04/13/2021 |
| e) Carlton Kemp | MHW/witness #3 | 04/13/2021 |
| f) Jermaine Marshall | MHW/Witness #4 | 04/13/2021 |
| g) Holly Biedugnis | MHW/Witness #5 | 04/16/2021 |

**SUMMARY OF FINDINGS:**

- The patient/complainant stated that the peer has been antagonizing him since he came to the unit. The patient stated that the peer is accusing him of being a sex offender and threatened to beat him up. The patient stated that he reported the issue to staff and nothing was done about it. The patient stated that on April 09, 2021, he was assaulted by a peer while they were at the lounge area on the B wing. The patient stated that as a result he was moved to another hallway, the patient stated that instead the peer should have been moved.

- The PCO stated that the alleged incident was not reported to her by staff, the staff stated she found out about it from her supervisor 48 hours later, the PCO stated that she then met with the staff on duty the day of the alleged incident to investigate, the staff on the floor collectively answered that they did not witness the alleged assault. The PCO stated that the patient and the peer have been antagonizing each other for days; staff have been monitoring and redirecting them. The PCO stated that when the patient complained about being threatened by the peer, the patient was offered several times to move out of the wing, but he refused it.

- Witness #1 Stated that the patient reported that he was being harassed by a peer that was making up stories about him being a sexual offender. According to witness #1, the patient was discussing his charges with other peers; the witness suggested

that he stop doing that because of the risk of being targeted by the peers. Witness #1 stated that the patient never reported that he was being threatened physically by the peer, witness #1 stated that on April 12, 2021, the patient reported that he have been assaulted by the peer, the witness added that she filled a DPPC report on behalf of the patient.

- Witness #2 stated that although a lot was going on in the unit that day he did not witness the alleged assault, the staff stated that both patients were redirected several times because of arguments, but neither patient reported a physical altercation.

- Witness #3 stated that there were several restraints in the unit that day and that he did not recall a patient-to-patient assault happening that day.

- Witness #4 Stated that he did not witness the physical assault, the staff stated that learn about it two days later from the charge nurse.

- Witness #5 stated that the patient was standing in the lounge area next to the television when the peer walks by the patient, spat on him, and also through an empty milk carton to the patient. Witness #5 stated that the peer did not punch the patient on the back of the head. Witness #5 stated that other staff witnessed the incident; they intervened and redirected both patients.

- Per video: This writer reviewed video footage of the incident, the video revealed other staff present at the time and place of the incident, including the PCO. Video review showed the peer walking toward the patient moving his head backward and spitting at him.

## CONCLUSION(S):

Based on the facts presented and reviewed by the Complaint Review Committee, the **Complaint is**

☐ **Unsubstantiated**

☐ **Substantiated in Part**

☒ **Substantiated**

This conclusion is based on the following facts:

- Per witness statements and video review it can be determined that the patient was assaulted by the peer and that there was staff present at the time and place of the incident.

- Per documentation review, it can be determined that the incident was not documented as required by WRCH protocol (Occurrence/Incident reporting protocol #6.01).

- It can be determined that staff did contribute to an incident and/or condition that were dangerous, illegal, and/or inhumane, as defined by DMH Regulations 104 CMR 32.00.
- The complaint is substantiated.

**CRC Recommendation / Actions (Optional):**

**MHIS Notes**



*The Commonwealth of Massachusetts*
*Executive Office of Health and Human Services*
*Department of Mental Health*
*Central Mass Area*
*Worcester Recovery Center and Hospital*

..........R
*Governor*

**KARYN E. POLITO**
*Lieutenant Governor*

**MARYLOU SUDDERS**
*Secretary*

**JOAN MIKULA**
*Commissioner*

**JERRY JULIANO**
*Area Director*

**JACQUELINE DUCHARME**
*Chief Executive Officer*

**Reply to:**
Worcester Recovery Center
and Hospital
309 Belmont Street
Worcester, MA 01604
Phone (508) 368-4000
Fax (508) 363-1515
TTY (508) 752-0127
www.mass.gov/dmh

*[handwritten: Already Proved my Care EXHIBIT A TO: MOTION TO INCLUDE Documents (Dated 6-26-2022) Against W.R.C.H. STAFF!]*

To:        Parties to the Complaint

From:      Jacqueline Ducharme
           Chief Executive Officer

Date:      April 20, 2021

Re:        Decision Letter to Complaint Log #INC37548

---

The Complaints Department received this complaint on April 12, 2021. The complaint alleges that a peer is threatening the patient and the patient has notified his social worker that he is in fear for his safety.

During the fact-finding process, seven individuals with information pertinent to the complaint were interviewed. Relevant documentation/video was also reviewed.

**FINDINGS**
The fact-finding process addresses whether staff contributed to a situation that is dangerous, illegal, or inhumane. The findings are as follows:

- Per witness statements and video review it can be determined that the patient was assaulted by the peer and that there was staff present at the time and place of the incident.

- Per documentation review, it can be determined that the incident was not documented as required by WRCH protocol (Occurrence/Incident reporting protocol #6.01).

- It can be determined that staff did contribute to an incident and/or condition that were dangerous, illegal, and/or inhumane, as defined by DMH Regulations 104 CMR 32.00.



# The Commonwealth of Massachusetts
## Executive Office of Health and Human Services
## Department of Mental Health
## Central Mass Area
## Worcester Recovery Center and Hospital

**CHARLES D. BAKER**
*Governor*

**KARYN E. POLITO**
*Lieutenant Governor*

**MARYLOU SHUDDERS**
*Secretary*

**BROOKE DOYLE**
*Commissioner*

**JERRY JULIANO**
*Acting Area Director*

Reply to:
Worcester Recovery Center
and Hospital
309 Belmont Street
Worcester, MA 01604
Phone (508) 368-4000
Fax (508) 363-1515
TTY (508) 752-0127
www.mass.gov/dmh

To:           Parties to the Complaint

From:        Kathleen Wenzel
             Chief Operating Officer

Date:        November 09, 2021

Re:          Decision Letter to Complaint Log #INC48751

*[handwritten: Violated my Rights — Is Proven Already]*

The Complaints Department received this complaint on November 01, 2021. The complaint alleges that the patient was forced to call his attorney on the phone in a common area without any privacy.

During the fact-finding process, three individuals with information pertinent to the complaint were interviewed. Relevant documentation/video was also reviewed.

**FINDINGS**
The fact-finding process addresses whether staff contributed to a situation that is dangerous, illegal, or inhumane. The findings are as follows:

- Based on witnesses' statements it can be determined that the patient was forced to use a phone in a common area to call his lawyer.

- Based on witnesses' statements it can be determined that staff on the unit fail to provide the necessary privacy to the patient as mandated per MGL; Chapter 123, Section 23 by not allowing reasonable access to a telephone to make and receive confidential telephone calls and to assist when desired and necessary.

- It can be determined that staff did contribute to an incident and/or condition that was dangerous, illegal, and/or inhumane, as defined by DMH Regulations 104 CMR 32.00.

- The complaint is substantiated.

Please contact your Human Rights Officer should you have any questions about this letter.

**CONCLUSION**
I agree with the findings as described.  I shall consider this matter closed after the following action(s).

**ACTION**

Worcester Recovery Center and Hospital (WRCH) COO or designee shall review these findings and determine what action should be taken.

Documentation of completion of this action shall be forwarded to the WRCH Complaints Dept. Attn: Tara Callahan no later than 11/24/2021.

**RECONSIDERATION**
Per 104 CMR 32.04 (7), you or any party to the complaint have the right to request reconsideration of this decision.  You or the parties must request reconsideration in writing within ten (10) business days of receipt of the decision.  The request must be detailed and indicate that an essential witness was not interviewed or an important fact was not considered, the decision is not reasonably supported by the facts, or the decision is based on an erroneous interpretation of applicable law or policy.  The final decision shall be issued within ten (10) business days of the receipt of the request for reconsideration or twenty (20) business days if further fact-finding is necessary.  Reconsideration is not required before filing an appeal.  The request for reconsideration should be sent to:

> Kathleen Wenzel
> Chief Operating Officer
> Department of Mental Health
> Worcester Recovery Center and Hospital
> 309 Belmont Street
> Worcester, Massachusetts 01604

In addition to reconsideration, an appeal may be filed by the client or an individual or group action on behalf of a client or a client's estate.  Other parties may not use the appeal process. All appeals must be submitted in writing ten (10) business days after receipt of the decision. The appeal must be detailed and indicate that an essential witness was not interviewed or an important fact was not considered, the decision is not reasonably supported by the facts, or the decision is based on an erroneous interpretation of applicable law or policy.  The decision on the appeal shall be given to the parties within thirty (30) business days from the receipt of the appeal unless further investigation is necessary in which case the decision shall be issued within ten (10) days of receipt of the new report.  The request for appeal should be completed on an appeal form and sent to:

> Jerry Juliano, Acting Area Director
> Department of Mental Health
> Central Mass Area Office
> 361 Plantation Street
> Worcester, MA  01605

cc:   Office of Investigations
      Casefile
      HRO(s)